THOMAS H. CLARKE, JR. (SBN 47592)
TIMOTHY A. DOLAN (SBN 209674)
ROPERS, MAJESKI, KOHN & BENTLEY
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone:     (415) 543-4800
Facsimile:     (415) 972-6301
tclarke@rmkb.com
tdolan@rmkb.com

Attorneys for Plaintiff
MOSS LANDING COMMERCIAL PARK LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MOSS LANDING COMMERCIAL PARK LLC, <br><br> Plaintiff, <br><br> v. <br><br> KAISER ALUMINUM CORPORATION, KAISER ALUMINUM AND CHEMICAL CORPORATION, and DOES 1 through 100, <br><br> Defendants. | CASE NO.  C07 06072 RMW/PVT <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> • CWA 1365(a)(1)(A) <br> • RCRA 6972(a)(1)(B) <br> • Continuing Public Nuisance & Public Nuisance Per Se <br> • Continuing Private Nuisance & Private Nuisance Per Se <br> • Negligence Per Se <br> • Declaratory Relief <br> • Equitable Indemnity & Contribution <br> • Section 1428 C.C. <br> • Breach of contract <br><br> **DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1.     This court has subject matter jurisdiction under 28 U.S.C. section 1331, in that this case arises under the laws of the United States, 42 U.S.C. section 6972, 33 U.S.C. section 1365, and 28 U.S.C. sections 2201 and 2202.

2.     The court has supplemental jurisdiction under 28 U.S.C. section 1367(a) in that the state law claims of plaintiff MOSS LANDING COMMERCIAL PARK LLC ("MLCP") are so related to the claims over which the Court exercises original jurisdiction that they form part of the

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    same case or controversy under Article III of the United States Constitution.

2        3.    Venue is proper in this judicial district pursuant to 28 U.S.C. section 1391(b, c)

3    and 42 U.S.C. section 6972(c) because the events giving rise to the claims of MLCP occurred

4    within the District, because the property which is the subject of the action is situated within the

5    District, and because defendants KAISER ALUMINUM CORPORATION and KAISER

6    ALUMINUM & CHEMICAL CORPORATION (hereinafter jointly referred to as "KACC")

7    conducted activities within the District giving rise to the claims of MLCP.

8        4.    On November 30, 2007, MLCP served a Notice Letter on KACC regarding the

9    violations of Clean Water Act ("CWA") and Resource Conservation and Recovery Act

10   ("RCRA"), as set forth herein, and the intention of MLCP to file suit against KACC.  Copies of

11   the Notice Letter were sent to the Administrator of the U.S. Environmental Protection Agency

12   ("EPA"), the Regional Administrator of EPA Region IX, the Executive Director of the State

13   Water Resources Control Board ("SWRCB"), the Executive Office of the Central Coast Regional

14   Water Quality Control Board ("RWQCB"), the Secretary of the California Environmental

15   Protection Agency ("Cal-EPA"), the Director of the California Department of Toxic Substances

16   Control ("DTSC"), and the Chairman and Executive Officer of the California Integrated

17   Management Board ("IWMB") as required by 33 U.S.C. section 1365(b)(1) and 42 U.S.C. section

18   6972(b)(1).  On information and belief MLCP alleges that the CWA actions set forth herein

19   involve toxic pollutants within the meaning of 33 U.S.C. sections 1365(b) and 1317(a) and also

20   that the RCRA actions set forth herein involve "subchapter III" violations (aka Subtitle C of the

21   Act, 42 U.S.C. sections 6921 et seq.).

22       5.    Neither EPA nor any agency of the State of California has commenced or is

23   diligently prosecuting an action to redress the violations of the CWA alleged in the Notice Letter.

24   Claims for civil penalties asserted in this action are not barred by any prior administrative penalty

25   under section 309(g) of the CWA, 33 U.S.C. section 1319(g).

26       6.    Neither EPA nor any agency of the State of California has commenced or is

27   diligently prosecuting an action to redress the violations of RCRA alleged in the Notice Letter.

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Neither EPA nor any agency of the State of California is engaging in a removal action pursuant to 42 U.S.C. section 9604. Neither EPA nor any agency of the State of California has incurred costs to initiate a Remedial Investigation and Feasibility Study pursuant to 42 U.S.C. section 9604, or is diligently proceeding with a remedial action pursuant to 42 U.S.C. sections 9601 et seq. EPA has not obtained a court order or issued an administrative order pursuant to 42 U.S.C. section 9606 or 42 U.S.C. section 6973 pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study, or proceeding with a remedial action.

## INTRADISTRICT ASSIGNMENT

7.      Intradistrict assignment of this matter to the San Jose Division of this Court is appropriate pursuant to Civil Local Rule 3-2(c,e). The events, action, and omissions which give rise to the claims of plaintiff MLCP occurred in Monterey County, and the property at issue is located in Monterey County.

## THE PARTIES

8.      Plaintiff MLCP is a California LLC with its headquarters and principal place of business located at 7695 Highway 1, Moss Landing, CA 95039.

9.      Defendant Kaiser Aluminum & Chemical Corporation is a Delaware corporation with its headquarters located at 27422 Portola Pkwy., Ste. 350, Foothill Ranch, CA 92610-2831 and its principal place of business located at 5847 San Felipe St., Suite 2500, Houston, TX 71326-3777. At all times relevant, Kaiser Aluminum & Chemical Corporation has been and is a wholly owned subsidiary of Kaiser Aluminum Corporation. One hundred percent of the equity of Defendant Kaiser Aluminum & Chemical Corporation is owned by Defendant Kaiser Aluminum Corporation; on information and belief, MLCP alleges that all officers and directors of Kaiser Aluminum & Chemical Corporation are officers and directors of Kaiser Aluminum Corporation.

10.      Defendant Kaiser Aluminum Corporation is a Delaware corporation with its headquarters and principal place of business located at 27422 Portola Pkwy., Ste. 350, Foothill Ranch, CA 92610-2831. Defendant Kaiser Aluminum Corporation is the parent of Defendant

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1 Kaiser Aluminum & Chemical Corporation and owns 100% of its equity; Defendant Kaiser

2 Aluminum & Chemical Corporation is a subsidiary of Defendant Kaiser Aluminum Corporation.

3 On information and belief, MLCP alleges that all of the acts and omissions of Defendant Kaiser

4 Aluminum & Chemical Corporation, as alleged herein, were done at the request or direction of

5 Defendant Kaiser Aluminum Corporation, were done as a matter of corporate policy established

6 by Defendant Kaiser Aluminum Corporation, or were ratified or approved after-the-fact by

7 Defendant Kaiser Aluminum Corporation. MLCP alleges that Defendant Kaiser Aluminum

8 Corporation did aid, abet, and encourage and has contributed to the creation, existence, or

9 maintenance of the two dumps, as noted herein, that contain hazardous waste and create and have

10 created toxic soil and water pollutants and contaminants, as noted herein. MLCP further alleges

11 that Defendant Kaiser Aluminum Corporation did aid, abet, and encourage and has contributed to

12 the creation, existence, and maintenance of the imminent and substantial danger to the

13 environment posed by the two dumps even after being on notice of the hazardous and toxic nature

14 of the dumps and their effluent following the 1978 release of chromium contaminated leachate, as

15 noted herein, and was and is additionally reflected in the written statement made to EPA in 1981

16 that the two dumps may contain hazardous waste.

17    11.    On information and belief MLCP alleges that Defendants DOES 1 through 100 did

18 act or failed to act in a manner that aided, abetted, and encouraged and has contributed to the

19 creation, existence, or maintenance of the two dumps, the toxic soil and water pollutants and

20 contaminants noted herein, and the imminent and substantial endangerment created thereby. The

21 true names of DOES 1 through 100 are unknown to MLCP at this time. When their identities are

22 ascertained, the complaint shall be amended to reflect their true names.

23                    **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

24    12.    The property impacted by the discharges, releases, hazardous wastes, and toxic

25 pollutants described herein is located adjacent to Highway 1, Dolan Road, and Moro Cojo

26 Slough. See Exhibit A attached hereto. The property is comprised of approximately 200 acres

27 and is further described by Assessor's Parcel Numbers 131-054-008, 133-173-002, 133-172-004,

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    and 133-172-013. Hereinafter this site is referred to as "The Property". MLCP is the current

2    owner of The Property.

3    13.    Immediately across Highway 1 to the west of The Property is the Moss Landing

4    Harbor, which is directly connected to Monterey Bay. See Exhibit A. Monterey Bay is part of

5    the Monterey Bay National Marine Sanctuary. See Exhibit B attached hereto for a map showing

6    the boundaries of the Sanctuary. The Moro Cojo Slough also runs into the Moss Landing Harbor.

7    See Exhibit A. The groundwater gradient for the shallow groundwater immediately beneath The

8    Property is generally to the West and also to the South, toward the Harbor and Monterey Bay on

9    the one hand and toward the Moro Cojo Slough on the other.

10    14.    During World War II (starting in 1942) and thereafter until 1985, KACC

11    established, built, owned, and operated various industrial operations at The Property. Initially

12    KACC constructed various facilities for the production of magnesium oxide for magnesia metal

13    production at a nearby plant located in Permanente, California. After World War II this market

14    ceased, and starting in approximately 1946 operations at The Property were converted to a

15    magnesia plant and a refractory plant for the production of magnesium oxide, production of

16    products containing magnesium oxide, and production of refractory brick. The production of

17    refractory (or high-temperature tolerant) brick involved the use of chromite ore as an input to the

18    process. Chromite ore is a brownish-black mineral that is a major source of chromium.

19    15.    During these operations, KACC and DOES 1-100 created two dumps on The

20    Property, referred to as Landfill #1 and Landfill #2. See Exhibit C hereto. These so-called

21    landfills do not meet modern standards for landfills. The two dumps were used for many decades

22    and were the depository for a wide variety of waste products, including (without limitation) used

23    refractory linings from kilns, materials from the clean-up of spills of chromite ore, periclase (the

24    cubic form of magnesium oxide), magnesium oxide, dolomite, plant sweepings from various

25    spills, and dusts from baghouse dust collectors.

26    16.    In a 1981 filing with EPA, KACC notes that in 1978 chromium-contaminated

27    leachate was being released and discharged from Landfill #1 and running into a ditch along Dolan

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   Road (see Exhibit A). Thereafter, the top of Landfill #1 was paved and allegedly no more wastes

2   were deposited therein. The 1981 filing notes that a collection drain pipe was also installed "at

3   the base of the pile for collection of the leachate being produced from the pile." Landfill #2 then

4   allegedly, according to the filing, became the sole dump at The Property for land filling wastes.

5   (See Exhibit C for a diagram from the 1981 filing with EPA by KACC showing the location of

6   the two dumps.) KACC notes in the 1981 filing that materials containing soluble chromium

7   compounds were deposited in the two dumps. Landfill #2 was allegedly closed in 1980. MLCP

8   believes that Landfill #2 has only a permeable gravel cap, and that one or more collection drain

9   pipes were also installed at the base of Landfill #2 for the collection of leachate and its

10  conveyance into the swampland adjacent thereto. The two dumps contain only highly permeable

11  dirt sides which allow the infiltration of rainwater and the exfiltration of leachate from the dumps.

12  Further, the dumps contain no liners or other physical impediments on the bottom aspect of the

13  dumps to prevent the infiltration of groundwater or the movement of leachate from within the

14  dumps into the groundwater.

15       17.    In the 1981 filing with EPA, KACC notes that the dumps "may contain material

16  that would be defined by the EPA today as hazardous waste." On information and belief, MLCP

17  alleges that between 1980 and its sale of The Property in 1985 KACC took no steps to assess

18  whether discharges or releases from the two dumps were having an adverse impact on the

19  environment, including whether they were causing contamination of surface or ground waters.

20  MLCP further alleges that KACC did not undertake any steps to obtain an NPDES permit for any

21  of the drain pipes that were placed within the dumps or for the drainage ditches and culverts about

22  the dumps, or to establish any treatment systems for leachate that was exiting the dumps into the

23  environment through said conveyances.

24       18.    On information and belief, MLCP alleges that the wastes contained within the

25  two dumps known as Landfill #1 and Landfill #2 are a hazardous waste within the meaning of

26  "subchapter III" of RCRA (aka Subtitle C of the Act, 42 U.S.C. sections 6921 et seq.) and 40

27  C.F.R. § 261.3. MLCP further alleges that the wastes contained in the two dumps are California

28

1    hazardous wastes.

2        19.    Monitoring wells across The Property have established the continuing, ongoing

3    release and discharge of toxic and other pollutants from the dumps, and the presence of

4    hexavalent chromium, antimony, lead, and nickel in the groundwater at concentrations well above

5    the drinking water levels established under California and Federal law.  These drinking water

6    standards are known as the maximum contaminant level ("MCL"); in the case of lead, it is known

7    as an "action level" ("AL").  The adverse health impacts of chrome compounds, antimony, lead,

8    and nickel upon humans are set forth in Exhibit D (monograms by the Department of Health &

9    Human Services, Agency for Toxic Substances and Disease Registry).

10        20.    Three of the many monitoring wells on The Property in which hexavalent

11    chromium, antimony, and nickel have been detected are immediately across Highway One from

12    the Moss Landing Harbor, and thus only several hundred feet from the Moss Landing Harbor.

13    Hexavalent chromium levels at various monitoring wells at the site have varied over time up to a

14    maximum of 673 ppb (micrograms per liter); antimony levels, to a maximum of 51 ppb; nickel

15    levels, to a maximum of 679 ppb; and, lead levels, to a maximum of 58 ppb.  The plume of these

16    metals (hexavalent chromium, lead, antimony, and nickel) is moving across The Property from

17    the dumps toward Moss Landing Harbor and the Moro Cojo Slough. The MCL for chrome is

18    based on "total chrome", of which hexavalent chromium is but one component; the California

19    MCL is 50 ppb, and the EPA MCL is 100 ppb.  The California and EPA MCL for antimony is 6

20    ppb; for nickel, 100 ppb.  The California and EPA AL for lead is 15 ppb.  Hexavalent chromium,

21    lead, antimony, and nickel are each a toxic pollutant within the meaning of 33 U.S.C. sections

22    1365(b) and 1317(a).

23        21.    On information and belief, MLCP alleges that the adversely impacted groundwater

24    beneath The Property is recharging and adversely impacting nearby surface water, including

25    Monterey Bay, Moss Landing Harbor, Moro Cojo Slough, and the swamplands in and about The

26    Property.   Further, MLCP alleges that waste-containing soils, soils contaminated by the

27    discharge and release of hexavalent chromium and other metals from the dumps, and the waste

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   itself are eroding into nearby surface waters and are moving downward into groundwater and also

2   moving through ditches and channels on The Property and off The Property to impact nearby

3   surface and ground waters, including Monterey Bay, Moss Landing Harbor, Moro Cojo Slough,

4   and the swamplands in and about The Property.

5       22.    The RWQCB has adopted the September 8, 1994 Water Quality Control Plan

6   ("Basin Plan") for Central Coast groundwater.  The Basin Plan mandates that all Central Coast

7   groundwater, except the Soda Lake Sub-Basin (which is not applicable herein), has a beneficial

8   use as drinking water.  As such, the MCLs determine whether groundwater meets the criteria of

9   the Basin Plan.  The discharges and releases from the dumps impair the drinking water beneficial

10  use of the groundwater.

11      23.    The Basin Plan also states that the beneficial uses of Moro Cojo Slough adjacent to

12  The Property includes, without limitation, cold and warm fresh water habitat, and applies the

13  chromium MCL standard to those uses.  MLCP alleges on information and belief that the

14  discharges and releases from the dumps impair these beneficial uses of the Moro Cojo Slough.

15      24.    The discharge of wastes without a permit into the waters of the State of California

16  is a violation of the prohibitions contained in the Basin Plan, and creates, or threatens to create, a

17  condition of degradation, nuisance, pollution, and contamination as defined by the California

18  Water Code.

19      25.    The financial and ownership interests in The Property of MLCP and its members

20  and managers has been impaired and degraded by the contaminant conditions noted herein.  The

21  contaminant conditions have exposed them to enforcement actions by regulatory agencies and

22  caused them to incur costs and expenses.

23      26.    In December, 1984 KACC sold The Property with improvements thereon to

24  National Refractories & Minerals Corporation ("NFMC").  In December, 2003 NFMC sold The

25  Property with improvements thereon to MLCP.  As part of the KACC-NFMC transaction, KACC

26  and NFMC entered into an Agreement on Environmental Compliance.  See Exhibit E.

27  ///

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

**FIRST CLAIM FOR RELIEF**

**Violation of Duty to Apply for a NPDES Permit in Violation of the Clean Water Act Alleged
Against KACC and DOES 1-100
(Violations of 33 U.S.C. §§ 1311, 1342)**

27.    MLCP incorporates the allegations set forth in Paragraphs 1 through 26, inclusive, as though fully set forth herein.

28.    33 U.S.C. section 1365(a)(1)(A) provides that any citizen may commence a civil action on his, her, or its own behalf against any "person" alleged to be in violation of an effluent standard or limitation under the CWA.  KACC is a "person" as defined by 33 U.S.C. section 1362(5).

29.    33 U.S.C. section 1311(a) states:  "Illegality of pollutant discharges except in compliance with law. Except as in compliance with this section and sections 302, 306, 307, 318, 402, and 404 of this Act, the discharge of any pollutant by any person shall be unlawful."

30.    The CWA prohibits the discharge of a pollutant to waters of the United States without an NPDES permit.  33 U.S.C. section 1342.  At no time relevant herein has KACC applied for or obtained an NPDES permit for the collection drain pipes that convey contaminated leachate from the dumps or for the ditches and culverts that convey contaminated leachate, waste-containing soils, soils contaminated by the discharge and release of hexavalent chromium and other metals from the dumps, and the waste itself related to the dumps.

31.    KACC and DOES 1-100 have discharged and continue to permit to discharge toxic pollutants from the dumps to waters of the United States since at least October, 1980.

32.    KACC and DOES 1-100 have been in violation of 33 U.S.C. section 1311(a) due to its failure to submit an application for an NPDES permit for its discharges and releases from the dumps to the waters of the United States every day since at least October, 1980.

33.    KACC and DOES 1-100 will continue to be in violation of 33 U.S.C. section 1311 each day that it fails to submit an application for an NPDES permit pursuant to 33 U.S.S. section 1342.

34.    Failure to submit an application for an NPDES permit is an ongoing violation of

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1  the CWA.

2      35.    Each day that KACC and DOES 1-100 allow the dumps to release and discharge

3  pollutants as noted herein without submitting an application for an NPDES permit for the

4  discharge of pollutants to waters of the United States is a separate and distinct violation of 33

5  U.S.C. section 1311(a).

6      36.    An action for relief under the CWA is authorized by 33 U.S.C. section 1365(a).

7  MLCP seeks injunctive relief requiring KACC and DOES 1-100 to forthwith obtain an NPDES

8  permit for the dumps, as noted herein, and to implement such pollution control requirements as

9  are mandated by said NPDES permit.  Further, MLCP seeks an injunction requiring KACC to

10  characterize and remediate the toxic pollutants and contamination that has resulted from its

11  violation of sections 1311(a) and 1342.  The acts and omissions of KACC and DOES 1-100 are

12  ongoing and continuous and, if allowed to continue, do and will irreparably harm MLCP.

13      37.    MLCP seeks the imposition of civil penalties pursuant to 33 U.S.C. section 1319

14  in light of the historical and ongoing violations of 33 U.S.C. sections 1311 and 1342 by KACC

15  and DOES 1-100 stretching over a period in excess of 2½ decades to the present.

16      38.    MLCP seeks an award of its costs, including reasonable attorney's fees and expert

17  witness fees, pursuant to 33 U.S.C. section 1365(d).

18  **SECOND CLAIM FOR RELIEF**

19  **Unpermitted Discharge of Pollutants to Waters of the United States in Violation of the
20  Clean Water Act Alleged Against KACC and DOES 1-100
(Violations of 33 U.S.C. §§ 1311, 1342)**

21      39.    MLCP incorporates the allegations set forth in Paragraphs 1 through 26 and 28

22  through 35, inclusive, as though fully set forth herein.

23      40.    33 U.S.C. section 1365(a)(1)(A) provides that any citizen may commence a civil

24  action on his, her, or its own behalf against any "person" alleged to be in violation of an effluent

25  standard or limitation under the CWA.  KACC and DOES 1-100 are a "person" as defined by 33

26  U.S.C. section 1362(5).

27      41.    33 U.S.C. section 1311(a) states: "Illegality of pollutant discharges except in

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1  compliance with law. Except as in compliance with this section and sections 302, 306, 307, 318,

2  402, and 404 of this Act, the discharge of any pollutant by any person shall be unlawful."

3      42.    KACC and DOES 1-100 have discharged and continue to discharge pollutants

4  from the dumps, from groundwater that discharges into surface waters (including Monterey Bay,

5  Moss Landing Harbor, Moro Cojo Slough, and the swamplands in and about The Property), and

6  from surface waters that discharge into groundwater, Monterey Bay, Moss Landing Harbor, Moro

7  Cojo Slough, and the swamplands in and about The Property, as noted herein.

8      43.    KACC and DOES 1-100 have been in violation of 33 U.S.C. section 1311(a), due

9  to its discharges of pollutants every day since at least October, 1980.  The violation is ongoing.

10     44.    KACC and DOES 1-100 will continue to be in violation of 33 U.S.C. section

11  1311(a) each day KACC and DOES 1 through 100 allow the release and discharge pollutants to

12  waters of the United States without an NPDES permit.

13     45.    The failure of KACC and DOES 1-100 to obtain an NPDES permit for the

14  discharge of pollutants noted herein is an ongoing violation of 33 U.S.C. section 1342.

15     46.    Each day that KACC and DOES 1-100 allow the discharge of pollutants, as noted

16  herein, and fails to obtain an NPDES permit, as noted herein, is a separate and distinct violation

17  of 33 U.S.C. sections 1311 and 1342.

18     47.    An action for relief under the CWA is authorized by 33 U.S.C. section 1365(a).

19  MLCP seeks injunctive relief requiring KACC and DOES 1-100 to forthwith obtain an NPDES

20  permit for the dumps, as noted herein, to implement such pollution control requirements as are

21  mandated by said NPDES permit, and to cease all discharges and releases of pollutants in

22  violation of 33 U.S.C. section 1311(a).  Further, MLCP seeks an injunction requiring KACC to

23  characterize and remediate the toxic pollutants and contamination that has resulted from its

24  violation of sections 1311(a) and 1342.  The acts and omissions of KACC and DOES 1-100 are

25  ongoing and continuous and, if allowed to continue, do and will irreparably harm MLCP.

26     48.    MLCP seeks the imposition of civil penalties pursuant to 33 U.S.C. section 1319

27  in light of the historical and ongoing violations of 33 U.S.C. sections 1311 and 1342 by KACC

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    and DOES 1-100 stretching over a period in excess of 2½ decades to the present.

2        49.    MLCP seeks an award of its costs, including reasonable attorney's fees and expert

3    witness fees, pursuant to 33 U.S.C. section 1365(d).

4                              **THIRD CLAIM FOR RELIEF**

5    **Creation of an Imminent and Substantial Endangerment to the Environment Alleged
        Against KACC and DOES 1-100**
6                      **(Violations of 42 U.S.C. § 6972(a)(1)(B))**

7        50.    MLCP incorporates the allegations set forth in Paragraphs 1 through 26, inclusive,

8    as though fully set forth herein.

9        51.    42 U.S.C. section 6972(a)(1)(B) provides that any "person" may commence a civil

10    action on his, her, or its own behalf against any "person" alleged to be a past generator or

11    transporter who has contributed to the disposal of any solid or hazardous waste which presents an

12    imminent and substantial endangerment to the environment.  MLCP, KACC, and DOES 1

13    through 100 are each a "person" as defined by 42 U.S.C. section 6903(15).

14        52.    KACC and DOES 1-100 are both a past generator and a past transporter that has

15    contributed to the disposal of solid and hazardous waste which presents an imminent and

16    substantial endangerment to the environment, as noted herein.  Further, by their acts and

17    omissions KACC and DOES 1-100 have contributed to the creation of an imminent and

18    substantial endangerment to the environment, as noted herein.  The releases and discharges from

19    the dumps constitute a disposal of both a solid and hazardous waste as described by 42 U.S.C.

20    sections 6903(3), 6903(5)(B), and 6903(27).

21        53.    The adverse impacts to soil, surface water, and groundwater from the discharges

22    from the dumps presents an imminent and substantial endangerment to the environment, as noted

23    herein, including The Property.

24        54.    Additionally, the migration of the wastes and the impacted soils, surface waters,

25    and groundwaters, as noted herein, pose an imminent and substantial endangerment to Monterey

26    Bay, Moss Landing Harbor, Moro Cojo Slough, and the swamplands in and about The Property.

27        55.    MLCP seeks injunctive relief from the ongoing imminent and substantial

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1  endangerment which requires KACC and DOES 1-100 to forthwith characterize and remediate

2  the contamination, including without limitation removing the two dumps from The Property. The

3  presence of unconfined and uncontrolled hazardous waste, as well as the leaching, discharges,

4  and releases as noted herein, will irreparably harm MLCP and further harm the environment,

5  including biota upon and ground and surface waters of The Property, Monterey Bay, Moss

6  Landing Harbor, Moro Cojo Slough, and the swamplands in and about The Property.

7         56.    MLCP seeks the imposition of civil penalties pursuant to 42 U.S.C. section

8  6928(g) in light of the historical and ongoing creation of an imminent and substantial

9  endangerment to the environment by and DOES 1-100 over a period in excess of 2½ decades to

10  the present. KACC and DOES 1-100 have been on notice since 1978, as noted in its filing with

11  EPA in 1981, that contaminated leachate from the dumps can escape and poses an imminent and

12  substantial threat to the environment.

13         57.    MLCP seeks an award of its costs, including reasonable attorney's fees and expert

14  witness fees, pursuant to 42 U.S.C. section 6972(e).

15                          **FOURTH CLAIM FOR RELIEF**

16  **Continuing Public Nuisance and Public Nuisance Per Se Alleged Against KACC and DOES**
                                        **1-100**
17

18         58.    MLCP incorporates the allegations set forth in Paragraphs 1 through 26, 29

19  through 35, and 42 through 46, inclusive, as though fully set forth herein.

20         59.    In permitting and continuing to permit the release and discharge of pollutions and

21  contaminants into the soil, surface water, and groundwater, as noted herein, KACC and DOES 1-

22  100 have created a condition that is harmful to health, offensive to the senses, and an obstruction

23  to the free use and enjoyment of property and the waters of the State. The conduct of KACC and

24  DOES 1-100 was and is unreasonable.

25         60.    In doing the acts and omissions alleged herein, KACC and DOES 1-100 violated

26  and failed to comply with statutes, ordinances, and regulations of public entities and agencies

27  relating to health, safety, and environmental protection.

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

61. By undertaking the acts and omissions alleged herein, KACC and DOES 1-100 violated and continue to violate State law, including but not limited to Section 5411 of the California Health & Safety Code. Section 5411 is, and at all times was, valid, in effect, and applicable to the dumps created by KACC and DOES 1-100; pursuant to Section 5461, violation of 5411 is a misdemeanor.

62. By undertaking the acts and omissions alleged herein, KACC and DOES 1-100 violated and continue to violate State law, including but not limited to Sections 370 and 371 of the California Penal Code. Sections 370 and 371 are, and at all times were, valid, in effect, and applicable to the dumps created by KACC and DOES 1-100; pursuant to Section 372, violation of Section 370 is a misdemeanor.

63. By undertaking the acts and omissions alleged herein, KACC and DOES 1-100 violated and continue to violate Federal law, including but not limited to 33 U.S.C. sections 1311(a) and 1345. Sections 1311 and 1345 are, and at all times were, valid, in effect, and applicable to the dumps, releases, and discharges created by KACC; pursuant to 33 U.S.C. section 1319(c), violation of either section 1311 or 1345 is a felony. KACC and DOES 1-100 were on notice as a result of the 1978 release of chromium contaminated leachate that ongoing releases could be reasonably anticipated, and that its failure to obtain an NPDES permit would allow such releases to continue in the future.

64. The pollution and contaminants created or abetted by KACC and DOES 1-100 not only adversely impacts MLCP but also the People of the State of California who own all surface water and groundwater, including the groundwater beneath and surface water of The Property, Monterey Bay, Moss Landing Harbor, Moro Cojo Slough, and the swamplands in and about The Property, pursuant to §§ 102 and 104 Water Code.

65. The seriousness of the resulting harm outweighs the social utility of the conduct of KACC and DOES 1-100.

66. MLCP's injury is separate and distinct from that of the public because contaminants and pollutants impacting The Property are migrating in surface waters and

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   groundwater and have adversely impacted both the soils and the surface and ground waters of The

2   Property, and separately and independently because MLCP has expended monies to characterize

3   the contamination.

4         67.    The pollution causing the continuing nuisance can be abated at a reasonable cost.

5         68.    MLCP has not consented to the discharge of pollutants or contaminants into the

6   soil, surface waters, and groundwater of The Property.

7         69.    As a proximate cause of the continuing nuisance created by KACC and DOES 1-

8   100, MLCP has incurred costs and suffered damages, and will continue to incur costs and suffer

9   damages until the soil, surface waters, and groundwater of The Property are remediated.  MLCP

10  has incurred costs and expenses in an amount to be proven at trial; the amount incurred to date is

11  in excess of $1 million.

12        70.    MLCP seeks injunctive relief requiring KACC and DOES 1-100 to immediately

13  cease all releases and discharges and forthwith characterize and remediate the contamination and

14  pollution.  The continued commission and omissions of the alleged acts by KACC and DOES 1-

15  100 will irreparably harm MLCP.  MLCP has no speedy or adequate remedy at law for this

16  irreparable harm.

17        71.    Because MLCP is in part benefiting the People of the State of California by

18  seeking remediation of surface water and groundwater owned by the People, and seeking to

19  benefit and prevent the further impairment of Monterey Bay, Moss Landing Harbor, Moro Cojo

20  Slough, and the swamplands in and about The Property, MLCP requests its attorney's fees

21  pursuant to Section 1021.5 C.C.P.

### FIFTH CLAIM FOR RELIEF

**Continuing Private Nuisance and Private Nuisance Per Se Alleged Against KACC and DOES 1-100**

22

23

24

25        72.    MLCP incorporates the allegations set forth in Paragraphs 1 through 26, 29

    through 35, and 42 through 46, inclusive, as though fully set forth herein.
26

27        73.    As a result of the acts and omissions of KACC and DOES 1-100 as set forth herein

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    the soil, surface waters, and groundwater of The Property are now polluted and contaminated.

2        74.    The presence of pollutants and contaminants in the soil, surface water, and

3    groundwater of The Property constitutes a continuing nuisance in that it is injurious to health, or

4    is indecent or offensive to the senses, or an obstruction to the free use of property so as to

5    interfere with the comfortable enjoyment of life or property.

6        75.    The nuisance created by KACC and DOES 1-100 is substantial and unreasonably

7    interferes with the use and enjoyment of The Property by MLCP.

8        76.    In permitting and continuing to permit the release and discharge of pollutions and

9    contaminants into the soil, surface water, and groundwater, as noted herein, KACC and DOES 1-

10   100 have created a condition that is harmful to health, offensive to the senses, and an obstruction

11   to the free use and enjoyment of property. The conduct of KACC and DOES 1-100 were and is

12   unreasonable.

13       77.    In doing the acts and omissions alleged herein, KACC and DOES 1-100 violated

14   and failed to comply with statutes, ordinances, and regulations of public entities and agencies

15   relating to health, safety, and environmental protection.

16       78.    By undertaking the acts and omissions alleged herein, KACC and DOES 1-100

17   violated and continues to violate State law, including but not limited to Section 5411 of the

18   California Health & Safety Code. Section 5411 is, and at all times was, valid, in effect, and

19   applicable to the dumps created by KACC and DOES 1-100; pursuant to Section 5461, violation

20   of 5411 is a misdemeanor.

21       79.    By undertaking the acts and omissions alleged herein, KACC and DOES 1-100

22   violated and continues to violate Federal law, including but not limited to 33 U.S.C. sections

23   1311(a) and 1345. Sections 1311 and 1345 are, and at all times were, valid, in effect, and

24   applicable to the dumps, releases, and discharges created by KACC and DOES 1-100; pursuant to

25   33 U.S.C. section 1319(c), violation of either section 1311 or 1345 is a felony. KACC and DOES

26   1-100 were on notice as a result of the 1978 release of chromium contaminated leachate that

27   ongoing releases could be reasonably anticipated, and that its failure to obtain an NPDES permit

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    would allow such releases to continue in the future.

2        80.    The injury of MLCP is separate and distinct from that of the public because

3    contaminants and pollutants impacting the soil of The Property and migrating in surface waters

4    and groundwater have impacted the soils, surface waters, and groundwater of The Property, and

5    separately and independently because MLCP has expended monies to characterize the pollution

6    and contamination.  MLCP has incurred costs and expenses in an amount to be proven at trial; the

7    amount incurred to date is in excess of $1 million.

8        81.    The nuisance condition created by KACC and DOES 1-100 can be abated at a

9    reasonable cost.

10        82.    As a proximate cause of the continuing nuisance created by KACC and DOES 1-

11    100, MLCP has incurred costs and suffered damages, and will continue to incur costs and suffer

12    damages until the soil, surface waters, and groundwater of The Property are remediated.  MLCP

13    has incurred costs and expenses in an amount to be proven at trial; the amount incurred to date is

14    in excess of $1 million.

15        83.    MLCP seeks injunctive relief requiring KACC and DOES 1-100 to immediately

16    cease all discharges and releases and forthwith characterize and remediate the contamination and

17    pollution.  The continued commission and omissions of the alleged acts by KACC and DOES 1-

18    100 will irreparably harm MLCP.  MLCP has no speedy or adequate remedy at law for this

19    irreparable harm.

20        84.    Because MLCP is in part benefiting the People of the State of California by

21    seeking remediation of surface water and groundwater owned by the People, and seeking to

22    benefit and prevent the further impairment of Monterey Bay, Moss Landing Harbor, Moro Cojo

23    Slough, and the swamplands in and about The Property, MLCP requests its attorney's fees

24    pursuant to Section 1021.5 C.C.P.

25                    **SIXTH CLAIM FOR RELIEF**

26            **Negligence Per Se Alleged Against KACC and DOES 1-100**

27        85.    MLCP incorporates the allegations set forth in Paragraphs 1 through 26, 29

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    through 35, 42 through 46, 59 through 60, and 64 through 69, inclusive, as though fully set forth

2    herein.

3    86.    At all times KACC and DOES 1-100 had a duty to conduct their disposal

4    operations associated with their manufacturing activities in such a manner so as to avoid

5    discharging and releasing pollutants and contaminants into the soil, surface waters, and

6    groundwater of The Property, and to immediately characterize and remediate any spills, releases,

7    and discharges that occurred or occur.

8    87.    KACC and DOES 1-100 have failed to satisfy their duty.

9    88.    By undertaking the acts and omissions alleged herein, KACC and DOES 1-100

10   violated and continues to violate State law, including but not limited to Section 5411 of the

11   California Health & Safety Code.  Section 5411 is, and at all times was, valid, in effect, and

12   applicable to the dumps created by KACC; pursuant to Section 5461, violation of 5411 is a

13   misdemeanor.

14   89.    By undertaking the acts and omissions alleged herein, KACC and DOES 1-100

15   violated and continue to violate State law, including but not limited to Sections 370 and 371 of

16   the California Penal Code.  Sections 370 and 371 are, and at all times were, valid, in effect, and

17   applicable to the dumps created by KACC and DOES 1-100; pursuant to Section 372, violation of

18   370 is a misdemeanor.

19   90.    By undertaking the acts and omissions alleged herein, KACC and DOES 1-100

20   violated and continues to violate Federal law, including but not limited to 33 U.S.C. sections

21   1311(a) and 1345.  Sections 1311 and 1345 are, and at all times were, valid, in effect, and

22   applicable to the dumps, releases, and discharges created by KACC and DOES 1-100; pursuant to

23   33 U.S.C. section 1319(c), violation of either section 1311 or 1345 is a felony.  KACC and DOES

24   1-100 were on notice as a result of the 1978 release of chromium contaminated leachate that

25   ongoing releases could be reasonably anticipated, and that its failure to obtain an NPDES permit

26   would allow such releases to continue in the future.

27   91.    MLCP is among the class of entities for whom the statutes KACC and DOES 1-

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    100 violated were intended to protect.

2    92.    The damages and harm suffered by MLCP are the result of the statutory violations

3    of KACC and DOES 1-100 and the statutes in question were intended to protect against the type

4    of harm and damages that MLCP has suffered.

5    93.    As a proximate cause of the statutory violations by KACC and DOES 1-100,

6    MLCP has incurred costs and suffered damage and harm, and will continue to incur costs and

7    suffer damage and harm until the pollutants and contaminants adversely impacting the soil,

8    surface waters, and groundwater of The Property, Monterey Bay, Moss Landing Harbor, Moro

9    Cojo Slough, and the swamplands in and about The Property are characterized and remediated.

10   MLCP has incurred costs and expenses in an amount to be proven at trial; the amount incurred to

11   date is in excess of $1 million.

12   94.    MLCP seeks injunctive relief requiring KACC and DOES 1-100 to immediately

13   cease all discharges and releases and forthwith characterize and remediate the contamination.

14   The continued commission and omissions of the alleged acts by KACC and DOES 1-100 will

15   irreparably harm MLCP.  MLCP has no speedy or adequate remedy at law for this irreparable

16   harm.

17   95.    Because MLCP is in part benefiting the People of the State of California by

18   seeking remediation of surface water and groundwater owned by the People, and seeking to

19   benefit and prevent the further impairment of Monterey Bay, Moss Landing Harbor, Moro Cojo

20   Slough, and the swamplands in and about The Property, MLCP requests its attorney's fees

21   pursuant to Section 1021.5 C.C.P.

22   **SEVENTH CLAIM FOR RELIEF**

23   **Declaratory Relief Alleged Against KACC and DOES 1-100 Pursuant to 28 U.S.C. § 2201
     and California Code of Civil Procedure § 1060**

24   96.    MLCP incorporates the allegations set forth in Paragraphs 1 through 26, 28

25   through 38, 40 through 49, 51 through 57, 59 through 71, 73 through 84, 86 through 95, 106

26   through 109, and 111 through 115, inclusive, as though fully set forth herein.

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

97.    An actual controversy has arisen and now exists between MLCP and KACC and DOES 1-100 concerning their respective rights and duties in that MLCP contends that KACC and DOES 1-100 are responsible both at law and by contract for halting all discharges and releases of contaminants and pollutants, obtaining an NPDES permit, immediately engaging in remedial activities to clean-up the soil, surface waters, and groundwater contamination which MLCP contends KACC and DOES 1-100 have created, reimbursing MLCP for its past costs, compensating MLCP for its damages and losses, and paying any and all costs, fines, and penalties imposed on MLCP or any other third party as a result of the contamination and pollution.  In contrast KACC and DOES 1-100 disputes these contentions and contends that it has no duty at law or by contract to halt discharges and releases or obtain an NPDES permit, remediate the contamination and pollution, reimburse MLCP for its past costs, compensate MLCP for its damages and losses, or pay any costs, fines, and penalties imposed on MLCP or any other third party as a result of the contamination.

98.    MLCP desires a judicial determination of its rights and duties, and a declaration as to the liability of KACC and DOES 1-100 under law and pursuant to contract to halt discharges and releases, obtain an NPDES permit, remediate the contamination and pollution, reimburse MLCP for its past costs, compensate MLCP for its damages and losses, and pay any and all costs, fines, and penalties imposed on MLCP or any other third party as a result of the contamination.

99.    A judicial determination is appropriate and necessary at this time under the circumstances in order that MLCP may ascertain its rights and duties, be relieved of the financial and other burdens as set forth herein, and receive compensation for the detriment and damages noted.

100.    Further, MLCP seeks injunctive relief pursuant to 28 U.S.C. § 2202 and §§ 525 et seq. C.C.P.  MLCP seeks injunctive relief requiring KACC and DOES 1-100 to immediately cease all discharges and releases, obtain an NPDES permit, and forthwith characterize and remediate the contamination and pollution.

101.    In addition, MLCP, in bringing this action, acts within the public interest for the

1   protection of the citizens of California by seeking injunctive relief for the purpose of preventing

2   KACC and DOES 1-100 from discharging contaminants and pollutants, polluting soil, surface

3   waters, and groundwater, and failing to characterize and remediate their contamination.  As such

4   MLCP requests its attorney's fees pursuant to Section 1021.5 C.C.P., 33 U.S.C. section 1365(d),

5   and 42 U.S.C. section 6972(e).

### EIGHTH CLAIM FOR RELIEF

**Equitable Indemnity and Contribution Against KACC and DOES 1-100 Pursuant to California Law**

6

7

8

9       102.   MLCP incorporates the allegations set forth in Paragraphs 1 through 26, 59

10  through 71, and 73 through 84, inclusive, as though fully set forth herein.

11      103.   As a result of the improper use of The Property by KACC and DOES 1-100, the

12  releases and discharges of contaminants and pollutants from the two dumps, and the improper

13  acts and omissions of KACC and DOES 1-100 as noted herein, MLCP has suffered and will

14  continue to suffer liability, damages, costs, and expenses for which MLCP is entitled to

15  indemnification and contribution from KACC and DOES 1-100 in an amount according to proof,

16  but not less than $1 million.

17      104.   Accordingly, MLCP is entitled to indemnity and contribution from KACC and

18  DOES 1-100 for all liabilities, claims, damages, costs, and expenses, as set forth herein, in an

19  amount to be proven at trial, but not less than $1 million.

### NINTH CLAIM FOR RELIEF

**Section 1428 California Civil Code Against KACC and DOES 1-100**

20

21

22      105.   MLCP incorporates the allegations set forth in Paragraphs 1 through 26, 28

23  through 38, 40 through 49, 51 through 57, 59 through 71, and 73 through 84, inclusive, as though

24  fully set forth herein.

25      106.   KACC and DOES 1-100 have an obligation at law, pursuant to Section 3479 Civil

26  Code, Section 5411 Health & Safety Code, 33 U.S.C. section 1311, 33 U.S.C. section 1345, and

27  42 U.S.C. section 6972(a)(1)(B), among other laws, to (a) not create conditions of contamination

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    and pollution as a result of its industrial and manufacturing operations, including the creation of

2    the two dumps in a manner that they discharge and release contaminants and pollutants into the

3    soil, surface waters, and groundwater of The Property; (b) take affirmative steps to obtain an

4    NPDES permit and to prevent the release and discharge of pollutants and contaminants that

5    adversely impact The Property, Monterey Bay, Moss Landing Harbor, Moro Cojo Slough, and the

6    swamplands in and about The Property; and, (c) characterize and remediate the contamination

7    and pollution that has resulted and is resulting from the two dumps.

8        107.    KACC and DOES 1-100 have failed to undertake and implement its obligations at

9    law.

10       108.    MLCP seeks injunctive relief requiring KACC and DOES 1-100 to immediately

11   cease all discharges and releases, obtain an NPDES permit, and forthwith characterize and

12   remediate the contamination and pollution.  The continued commission and omissions of the

13   alleged acts by KACC and DOES 1-100 will irreparably harm MLCP.  MLCP has no speedy or

14   adequate remedy at law for this irreparable harm.

15       109.    Because MLCP is in part benefiting the People of the State of California by

16   seeking remediation of surface water and groundwater owned by the People, and seeking to

17   benefit and prevent the further impairment of Monterey Bay, Moss Landing Harbor, Moro Cojo

18   Slough, and the swamplands in and about The Property, MLCP requests its attorney's fees

19   pursuant to Section 1021.5 C.C.P.

20                          **TENTH CLAIM FOR RELIEF**

21                   **Breach of Contract Against KACC and DOES 1-100**

22       110.    MLCP incorporates the allegations set forth in Paragraphs 1 through 26, 59

23   through 71, and 73 through 84, inclusive, as though fully set forth herein.

24       111.    As part of its purchase of The Property from NRMC, MLCP alleges on

25   information and belief that it took assignment of the Agreement for Environmental Compliance

26   set forth as Exhibit E hereto.  As a separate and independent basis for this Claim, MLCP alleges

27   that the Agreement for Environmental Compliance runs with the land.

28

USDC NDCA No. C07 06072 RMW/PVT          - 22 -          FIRST AMENDED COMPLAINT FOR
                                                        DAMAGES AND INJUNCTIVE RELIEF

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    112.    MLCP has performed all conditions, covenants, and promises required of its part

2    in accordance with the terms of the Agreement on Environmental Compliance.

3    113.    On or about November 30, 2007 MLCP requested KACC perform its obligations

4    under Section 2.5.

5    114.    On information and belief, MLCP alleges that KACC has breached the Agreement

6    by refusing to reimburse MLCP for its costs and expenses.

7    115.    As a result of the breach by KACC, MLCP has incurred costs and expenses that

8    are costs and expenses for which KACC has an obligation to pay 100%. MLCP has been

9    damaged in an amount to be proven at trial, but not less than $1 million.

10                                          **PRAYER FOR RELIEF**

11    Wherefore, MLCP prays for relief against KACC and DOES 1-100 as follows:

12    1.    With respect to the First, Second, Seventh, and Ninth causes of action, for an

13    injunction requiring KACC and DOES 1-100 to obtain an NPDES permit as noted herein and

14    implement the pollution control requirements thereof.

15    2.    With respect to the First through Seventh and Ninth causes of action, for an

16    injunction requiring KACC and DOES 1-100 cease all discharges and releases of contaminants

17    and pollutants, and to characterize and remediate the contamination and pollution as noted herein.

18    3.    With respect to the First, Second, and Third causes of action, for the imposition of

19    civil penalties pursuant to 33 U.S.C. section 1319 and 42 U.S.C. section 6928(g).

20    4.    With respect to the First through Seventh and Ninth causes of action, for costs,

21    including attorney's fees and expert witness fees, pursuant to 33 U.S.C. section 1365(d), 42

22    U.S.C. section 6972(e), and Section 1021.5 California Code of Civil Procedure.

23    5.    With respect to the Seventh Cause of Action, for a declaration that KACC and

24    DOES 1-100 are obligated to halt all discharges and releases of contaminants and pollutants, to

25    obtain an NPDES permit, to characterize and remediate the adverse impact of the contaminants

26    and pollutants, to compensate MLCP for its damages, costs, and losses in an amount to be proven

27    at trial, but not less than $1 million, and to pay any and all costs, fines, and penalties imposed on

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

USDC NDCA No. C07 06072 RMW/PVT          - 23 -          FIRST AMENDED COMPLAINT FOR
                                                          DAMAGES AND INJUNCTIVE RELIEF

1    MLCP or any other third party as a result of the contamination and pollution.

2        6.        With respect to the Fourth through Sixth, Eighth, and Tenth causes of action, for

3    an award for the damages and losses of MLCP in an amount to be proven at trial, but not less than

4    $1 million.

5        7.        For costs of suit incurred herein.

6        8.        For prejudgment interest on all damages as authorized by law.

7        9.        For such other and further relief as this Court deems just and proper.

8    Dated:   November 30, 2007                ROPERS, MAJESKI, KOHN & BENTLEY

9

10                                            By:_____ /s/ Thomas H. Clarke, Jr._____
                                                  THOMAS H. CLARKE, JR.
11                                                Attorneys for Plaintiff
                                                  MOSS LANDING COMMERCIAL PARK
12                                                LLC

13

14                          **DEMAND FOR JURY TRIAL**

15    Pursuant to FRCP 38(b), MLCP demands a jury trial in this matter.

16    Dated: November 30, 2007                  ROPERS, MAJESKI, KOHN & BENTLEY

17

18                                            By:_____ /s/ Thomas H. Clarke, Jr._____
                                                  THOMAS H. CLARKE, JR.
19                                                TIMOTHY A. DOLAN
                                                  Attorneys for Plaintiff
20                                                MOSS LANDING COMMERCIAL PARK
                                                  LLC
21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   Exhibits:

2   A:  Aerial of property showing harbor, slough etc.

3   B:  Map showing boundaries of Monterey Bay Nat. Marine Sanctuary.

4   http://montereybay.noaa.gov/intro/maps/mbfound_lg.jpg

5   C:  Diagram from 1981 filing showing two dumps.

6   D:  ATSDR monogram on Chromium, Antimony, Nickel, lead

7   http://www.atsdr.cdc.gov/tfacts13.html

8   http://www.atsdr.cdc.gov/tfacts15.html

9   http://www.atsdr.cdc.gov/tfacts7.pdf

10  http://www.atsdr.cdc.gov/tfacts23.html

11  E:  Enviro Indemnity Agreement

12  RC1/5033579.3/CB12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco