# EXHIBIT E:

## COPY OF THE AGREEMENT ON ENVIRONMENTAL COMPLIANCE

64

## AGREEMENT ON ENVIRONMENTAL COMPLIANCE

This Agreement on Environmental Compliance ("Agreement") is made this 31st day of December 1984 among National Refractories Holding Co., a Delaware corporation, National Refractories & Minerals Corporation, a California corporation, and 601725 Ontario Ltd., incorporated in Ontario, Canada, all with offices at 300 Lakeside Drive, Oakland, California 94643 (collectively referred to as "Buyers"), and Kaiser Aluminum & Chemical Corporation, a Delaware Corporation, Kaiser Agricultural Chemicals Corporation, a Delaware Corporation, and Kaiser Aluminum & Chemical of Canada Limited, incorporated in Nova Scotia, Canada, all with offices at 300 Lakeside Drive, Oakland, California 94643 (collectively referred to as "Sellers").

### WITNESSETH:

WHEREAS, Buyers and Sellers have entered into an Asset Purchase Agreement, of even date ("Asset Purchase Agreement") under which Buyers have agreed to purchase and Sellers have agreed to sell certain assets and properties ("Assets") on the Closing date as "Closing" is defined in the Asset Purchase Agreement;

1

WHEREAS, Clause 4.2 of said Asset Purchase Agreement provides that: "All environmental, operating, use and other permits, exceptions to zoning laws or other such rights relating to the Assets in any way whatsoever shall, to the extent transferable, accompany the Lease and assignments of leases of the Real Property and Equipment to Buyers and Sellers and Buyers will execute such assignments and assumptions as may be required to transfer such rights to Buyers. Buyers and Sellers shall cooperate to obtain the consents of all parties required in connection with the assignment or transfer of such permits. All obligations to be performed and all conditions to be met under any such permit shall, after Closing, be the responsibility and obligation of Buyers."

WHEREAS, Clause 4.11 of said Asset Purchase Agreement provides that: "Subject to the provisions of the Agreement on Environmental Compliance to be entered into on the Closing date, Sellers shall retain all liability imposed on Sellers by federal, state or local law or regulation for damages to the environment as a result of events occurring prior to the Closing or for failure prior to the Closing to comply with any federal, state or local law relating to the environment."

WHEREAS, Clause 10.1 of said Asset Purchase Agreement provides that Buyers and one or more of the other parties to the Asset Purchase Agreement shall enter into an "Agreement on Environmental Compliance";

WHEREAS, Clauses 15.2, 15.3, 15.4 and 15.5 of said Asset Purchase Agreement provide for indemnity by Sellers and indemnity by Buyers for matters covered by the Asset Purchase Agreement.

NOW THEREFORE, the parties hereto agree as follows:

ARTICLE 1. - Responsibility

1.1 After Closing the respective responsibilities of Buyers and Sellers for environmental hazard, damage, condition or regulatory non-compliance arising out of or in connection with ownership and operation of the Assets shall be governed by the provisions of the Asset Purchase Agreement and this Agreement.

1.2 Except as otherwise provided in this Agreement, Sellers shall retain all liability imposed by Federal, state, provincial or local law or regulation, and resulting from third party legal actions, for (a) penalties and damages or claims for damages to the environment resulting from events which occurred prior to Closing, (b) Sellers' failure or alleged failure prior to Closing to comply with Federal, state, provincial or local laws or regulations relating to the environment, and (c) remedial actions required by governmental authorities to rectify such pre-Closing events or regulatory non-compliance, such as removing, treating or disposing of any contaminants or bringing the surface or subsurface of land comprising the Assets into compliance with regulatory requirements. Buyers shall be liable for all such matters resulting from events and regulatory

non-compliance which occur after Closing. Buyers and Sellers shall share the costs in proportion to their respective liabilities in cases where damages or required remedial actions address events or regulatory non-compliance occurring both before and after Closing.

1.3  Buyers shall promptly notify Sellers in writing of any claim or threatened claim for environmental damage or penalty, or any demand or threatened demand by regulatory authorities for remedial action, which Buyers assert to be Sellers' responsibility under the terms of this Agreement. In such cases Sellers shall have the right, acting in good faith and without unnecessary delay, to contest such claim or demand at its own expense with counsel of its choice, or to negotiate the terms of remedial action. Buyers shall have the right to participate in any such litigation or contest at its own expense with counsel of their choice. If Sellers do not promptly exercise their right to litigate or contest such claim or demand, Buyers shall have the right, acting in good faith and without unnecessary delay, to litigate or contest such claim at its own expense with counsel of their choice. If it is subsequently determined that Sellers have refused to assume the defense of a claim or demand for which they had liability under this Agreement, the cost of defense of such claim borne by Buyers shall constitute an additional liability for which Sellers shall be obligated. Buyers and Sellers shall cooperate fully in the defense of any such litigation or contest or the negotiation of a remedial action plan, and each shall keep each other advised of the progress and disposition thereof.

ARTICLE 2. - <u>Permits; Remedial Action</u>

2.1 Buyers are purchasing the Assets for the purpose of conducting a refractories manufacturing business. Pursuant to the Asset Purchase Agreement, Sellers have agreed to assign and Buyers have agreed to assume as of Closing (to the extent permitted by law) all permits, including air, water and waste discharge, use, operating and mining permits, associated with the Assets (the "Permits"). To the extent any such Permits cannot be assigned, Buyers shall promptly apply for replacement Permits in Buyers' name.

2.2 A list of Permits associated with the Assets which are to be assigned to Buyers by Sellers or replaced by Buyers is attached hereto as Exhibit A.

2.3 For commercial activities and uses of the Assets other than mining and processing refractory raw materials and related non-metallic minerals, and manufacturing refractory and related products, Buyers shall pay all costs associated with (a) transferring existing and obtaining new Permits, (b) carrying out environmental monitoring, sampling, analysis, remedial planning and similar activities which are required as conditions of all Permits, and (c) performing all environmental remedial work.

2.4 For commercial activities and uses of the Assets in mining and processing refractory raw materials and related non-metallic minerals, and manufacturing refractory and related products:

    2.4.1 all costs associated with transferring existing and obtaining new Permits shall be paid by Buyers; and

5

2.4.2 all costs of carrying out environmental monitoring, sampling, analysis, remedial planning and similar activities which are required as conditions of all Permits with respect to environmental hazards or potential hazards which existed prior to December 31, 1984, shall be shared by Buyers and Sellers as follows:

(a) for calendar years 1985 through 1989, Sellers shall reimburse Buyers for one hundred percent (100%) of all such costs incurred at Moss Landing during those years;

(b) for calendar years 1990 through 1999 at Moss Landing, and for calendar years 1985 through 1994 at all other plant locations included in the Assets, Sellers shall reimburse Buyers fifty percent (50%) of the first $2,000,000 aggregate per year of all such costs incurred by Buyers, and one hundred percent (100%) of any balance in excess of $2,000,000.

2.5 The costs of remedial action (including monitoring, sampling, analysis, remedial planning and similar activities which are required on a permanent basis) with respect to environmental hazards or potential hazards which existed on or prior to December 31, 1984, shall be shared by Buyers and Sellers as follows:

2.5.1 except in the case of an expansion at Moss Landing as covered in Section 2.5.2 below, Sellers shall reimburse Buyers for one hundred percent (100%) of such costs at all plant locations;

6

2.5.2 where such remedial costs are incurred in connection with an expansion at Moss Landing, Sellers shall reimburse Buyers fifty percent (50%) of the first $2,000,000 of such costs, and one hundred percent (100%) of costs above $2,000,000. An "expansion" for this purpose shall mean the construction of facilities involving a significant change in the scope of current operations or in the existing capacity of the facilities as of December 31, 1984 (excluding modernization or optimization of such facilities).

2.6 At regular intervals to be agreed upon by the parties, Buyers shall furnish Sellers invoices itemizing amounts owed pursuant to this Article 2. Payment shall be due thirty (30) days from date of invoice. Buyers' costs used in calculating invoices shall be subject to audit at reasonable intervals.

ARTICLE 3. - <u>Buyers Obligations</u>

3.1 Buyers covenant and agree as follows:

3.1.1 At Moss Landing -

(a) to maintain the existing closed brick plant waste dumps including the Dolan Road embankment. This includes all ordinary maintenance, patching, and similar repairs, but not such extraordinary maintenance as replacement of the existing surface covers at the end of their useful lives;

(b) to reroute storm drains around the dump and to close off the present drain; and

(c) to maintain the leachate collection system and continue to process leachate as presently processed for so long as a hazardous waste processing permit is not required for this process.

3.1.2 At all locations –

(a) to avoid taking actions in areas of the Assets which Buyers knew or should have known were used prior to December 31, 1984, for the subsurface disposal of waste materials, which actions would trigger Sellers' liability or increase the scope of Sellers' liability. Such areas shall be designated in writing by mutual agreement of Buyers and Sellers. Notwithstanding any provisions of this Agreement to the contrary, all liability resulting from such actions shall be for Buyers' account. "Actions" for this purpose (i) include accidents, willful or negligent acts or omissions, and failure to observe the provisions of this Agreement, and (ii) exclude permit applications for operations filed in the ordinary course of business;

(b) to keep Sellers fully and promptly informed of any claim or threatened claim for damages, or any demand by any governmental authority for remedial action for the removal, treatment or disposal of any contaminants from the surface or subsurface of any land purchased as a part of the Assets for which Sellers may be wholly or partially responsible;

(c) to cooperate with Sellers (i) in developing and securing approval for remedial actions which utilize the

least-cost alternatives acceptable to the regulatory authorities requiring the remedial action, and (ii) implementing all required and appropriate remedial action. In developing and implementing such least-cost alternatives, good faith efforts will be made to minimize interference with Buyers' operations.

ARTICLE 4. - Reclamation

4.1  Except as set forth in Section 4.2 below, Buyers shall be solely responsible for the performance of all reclamation work that may be required on or in connection with any real property forming a part of the Assets, including implementation of the reclamation plan for Natividad as set forth in Use Permit No. 2970 issued by the Planning Commission of Monterey County, California (the "Natividad Use Permit").

4.2  If as a consequence of any state or Federal reclamation legislation which is enacted after December 31, 1984, (i) the Natividad Use Permit is either revoked or mandatorily revised prior to December 31, 1989, and (ii) as a result of such revocation or revision Buyers necessarily incur increased reclamation costs at Natividad over those costs which would otherwise have been incurred under the Natividad Use Permit, Sellers shall reimburse Buyers for fifty percent (50%) of the first $6,000,000 in such cost increases. Aggregated incremental cost increases above $6,000,000 shall be entirely for Buyers' account.

9

4.3 If Sellers shall pay any amounts to Buyers pursuant to Section 4.2, and if Buyers have as a consequence of the enactment of any such legislation and resulting permit revocation or revision any right to damages for condemnation, inverse condemnation, or the like, Buyers and Sellers shall jointly pursue such rights and shall share in any recovery on the same basis as they shared in the incremental cost increases in accordance with Section 4.2.

ARTICLE 5. - <u>Offsite Disposal Claims</u>

Sellers shall be responsible for any claims by third parties arising out of or in connection with Seller' disposal prior to Closing of hazardous or non-hazardous wastes on property which is not part of the Assets.

ARTICLE 6. - <u>Indemnity</u>

6.1 Buyers shall indemnify, defend and hold harmless Sellers from and against all demands, claims, actions or causes of action, assessments, damages, liabilities, costs and expenses, including, without limitation, interest, penalties and attorneys' fees and expenses (collectively, "Damages"), asserted against, imposed upon or incurred by Sellers by reason of or resulting from any failure of Buyers to comply with the responsibility and obligation of Buyers assumed under Articles 1, 2, 3, and 4 of this Agreement.

6.2 Sellers shall indemnify, defend and hold harmless Buyers from and against all demands, claims, actions or causes of action, assessments, damages, liabilities, costs and expenses, including, without limitation, interest, penalties and attorneys' fees and expenses (collectively, "Damages"), asserted against, imposed upon or incurred by Buyers by reason of or resulting from any failure of Sellers to comply with the responsibility and obligation of Sellers assumed under Articles 1, 2, 4, and 5 of this Agreement.

ARTICLE 7. - <u>Miscellaneous</u>

7.1 <u>Notices</u>. All notices, requests, demands, and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally on the party to whom notice is to be given, or upon receipt, if transmitted by telecommunication or wire, and properly addressed as follows:

(a) to Sellers at the address above first written;

    Attention: Mr. W. R. Linn
                  KB 1445

    with copy to: Mr. D. L. Perry
                    Vice President and General Counsel
                    Kaiser Aluminum & Chemical Corporation
                    300 Lakeside Drive
                    Oakland, CA  94643

(b) to Buyers at the address above first written;

    Attention: Mr. Charles C. Smith
                  KB 1460

      with copy to:  Mr. Brian J. McCarthy
                        Skadden, Arps, Slate, Meagher & Flom
                        515 South Figueroa Street
                        Los Angeles, CA 90071

Any party may change its address for purposes of this Article by giving the other parties written notice of the new address in the manner set forth above.

7.2 <u>Governing Law</u>. This Agreement shall be construed in accordance with, and governed by, the laws of the State of California.

7.3 <u>Assignment</u>. No party hereto shall assign this Agreement or any part thereof without the prior written consent of the other parties. Except as otherwise provided herein, this Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

7.4 <u>No Third Party Beneficiaries</u>. Nothing in this Agreement shall entitle any person other than the parties hereto and their respective successors and permitted assigns to any claim, cause of action, remedy or right of any kind.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the day and year first above written.

                                      NATIONAL REFRACTORIES HOLDING CO.

                                      By: _____

NATIONAL REFRACTORIES & MINERALS
CORPORATION

By: _____

601725 ONTARIO LTD.

By: _____

KAISER ALUMINUM & CHEMICAL CORPORATION

By: _____

KAISER AGRICULTURAL CHEMICALS
CORPORATION

By: _____

KAISER ALUMINUM & CHEMICAL OF CANADA
LIMITED

By: _____