1  THOMAS H. CLARKE, JR. (SBN 47592)
   TIMOTHY A. DOLAN (SBN 209674)
2  ROPERS, MAJESKI, KOHN & BENTLEY
   201 Spear Street, Suite 1000
3  San Francisco, CA 94105
   Telephone: 415 543 4800
4  Facsimile: 415 972 6301
   tclarke@rmkb.com
5  tdolan@rmkb.com

6  Attorneys for Plaintiff
   MOSS LANDING COMMERCIAL PARK LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| MOSS LANDING COMMERCIAL PARK LLC,<br><br>Plaintiff,<br><br>v.<br><br>KAISER ALUMINUM CORPORATION, KAISER ALUMINUM & CHEMICAL CORPORATION, and DOES 1 through 100,<br><br>Defendants. | CASE NO. C07 06072 RMW/PVT<br><br>**PLAINTIFF'S SUPPLEMENTAL SECOND CASE MANAGEMENT STATEMENT**<br><br>Date: May 23, 2008<br>Time: 10:30 a.m.<br><br>Hon. Ronald M. Whyte, Judge<br>Department 6 |
|---|---|

On May 2, 2008, Plaintiff Moss Landing Commercial Park, LLC ("Moss Landing") filed an amended Second Case Management Statement in connection with a conference scheduled for May 23, 2008. On May 16, 2008, Defendants Kaiser Aluminum Corporation and Kaiser Aluminum & Chemical Corporation (collectively "Kaiser") filed their own Case Management Statement. Some of the relief sought in the statements is the same: That the Court set an appropriate deadline for Kaiser to file their answer and address discovery issues.

However, while Moss Landing asks the Court to set a schedule for Rule 26 and other discovery scheduling issues, Kaiser's case management statement asks the Court to waive Rule 26 requirements and makes reference to "limited discovery." Plaintiff therefore submits the

following supplemental Statement to the Court to address certain representations appearing in Kaiser's Case Management Statement, and to assure that the Court has accurate versions of the relevant facts and law before it so that the conference on May 23, 2008 may be as productive as possible.

1. Although Kaiser's CMC Statement does not deny creating the waste piles that caused the contamination of the soil, surface waters, and groundwater at issue in this action (or, for that matter, the contamination and adverse impacts themselves), the Kaiser CMC Statement represents that at the time it sold the subject property the waste piles were in compliance with all relevant laws. (Kaiser CMC p.2:3-4.) Kaiser does not identify any of the laws in compliance with which the waste piles were purportedly maintained or any documentation on which it would rely in showing that it was incompliance. For purposes of this Case Management Conference, it suffices to note that the leaching and runoff of toxic contamination into surrounding wetlands and the groundwater nearby was a violation of the Federal Clean Water Act (33 U.S.C. §1365(a)(1)) as well as California's Porter-Cologne Act (Cal. Water Code §§ 13000 *et seq.*), among other laws.

2. Kaiser's CMC Statement asserts (as they did in the Bankruptcy Court) that Moss Landing's claims are barred because Moss Landing did not give Kaiser notice of the potential claim against Kaiser. (Kaiser CMC 3:13-23.) However, the law on notice of potential claims is exactly *contra* - since Kaiser was aware that Moss Landing was a potential claimant in its bankruptcy proceedings, it was Kaiser's obligation to give Moss Landing ongoing notice of all bankruptcy proceedings that might affect Moss Landing's rights.

There is no real question that Kaiser knew about Moss Landing and its involvement in the property - when National Refractories sought Bankruptcy Court approval to sell the property to Moss Landing in October 2003, Kaiser intervened to oppose the sale. There is also no real question that Kaiser knew its activities had potentially injured the Moss Landing property. In a 1981 filing with EPA, Kaiser noted that there was a 1978 leachate spill from the waste piles (leachate that was contaminated with chromium), and that "[due] to the age of this filling area, the regulation of waste dumping during the earlier period of its use, and the nature of the materials historically land filled at Moss Landing, this site may contain materials that would be defined by

1  EPA today as hazardous waste." Further, in 2005, Kaiser received a letter from the Regional
2  Water Quality Control Board, addressed to Kaiser and Moss Landing, among others, saying there
3  were significant environmental issues on the property.
4        Despite these facts, Kaiser did not give Moss Landing notice of ongoing proceedings in
5  Bankruptcy Court, such as the February 2006 hearing on approving the reorganization plan. The
6  United States Supreme Court has held for decades that this sort of failure, in and of itself, bars a
7  debtor from asserting bankruptcy discharge of obligations in this sort of situation. *New York v.*
8  *New York, New Haven & Hartford Ry. Co.*, 344 U.S. 293, 296-297 (1953)
9        This same failure precludes Kaiser from arguing that Moss Landing "bought the problem"
10  - that is, that Moss Landing bought the property with knowledge of the contamination, as if that
11  would bar Moss Landing's suit for (*inter alia*) an order requiring Kaiser to clean up the
12  contamination they caused. (*See* Kaiser CMC 2:24-3:12.) The law is to the contrary. See, for
13  example, *Gilroy Canning Co. v. California Canners & Growers*, 15 F. Supp. 2d 943, 946 (N.D.
14  Cal. 1998) ("Even if privity existed between Cal Can and GCC, the 'as is' clause is preempted by
15  RCRA and therefore is unenforceable.")
16     3.   Kaiser's CMC Statement suggests that the Bankruptcy Court's approval of the
17  2003 Consent Decree and/or the 2006 approval of the reorganization plan bars Moss Landing's
18  claims. This is, of course, the issue that will be resolved on appeal from the Delaware
19  Bankruptcy Court. For purposes of this Case Management Statement, Moss Landing wishes to
20  note that the Supreme Court has ruled that a RCRA claim, for example, only seeks injunctive
21  relief. *Meghrig v. KFCW, Inc.*, 516 U.S. 479, 487-488 (1996). As such, a RCRA cause of action
22  cannot be discharged in bankruptcy. *AM Int'l v. Datacard Corp.*, 106 F.3d 1342, 1348 (7th Cir.
23  1997).
24     4.   Kaiser's reference to "limited discovery" and request that Rule 26(a) and (f)
25  requirements be waived makes clear that the scope of discovery will be a substantial issue on
26  May 23, 2008.[1] Moss Landing does not object to waiver of Rule 26 requirements as a ***temporary***

---

[1] A copy of the Delaware Bankruptcy Court Order permitting the discovery herein is attached as "Exhibit 1."

matter but, if and when the Bankruptcy Court's order is reversed, Moss Landing would want to go forward with whatever discovery for which Rule 26 (a) and (f) provides that has not already occurred after the May 23, 2008 Conference.

As regards the sort of discovery sought, Moss Landing wishes to emphasize that discovery regarding Kaiser's activities is not being pursued for the purpose of mischief. Testing done to characterize and quantify contamination is aimed at specific types and categories of pollutants, and un-focused testing (*i.e.* not limited to likely contaminants) is prohibitively expensive. By way of example only, each *sample* that is tested for dioxins and furans costs in excess of $1,000, and an evaluation of the two waste piles[2] for these contaminants alone could cost as much as $250,000. Each individual test takes three to four weeks. The most thorough understanding of what Kaiser was putting *into* the waste piles would therefore permit narrowing and focusing of the testing for those contaminants have leached, or may leach, *out* of the waste piles and into the groundwater beneath the property, the surrounding wetlands on the property, and the adjacent Moss Landing Harbor, Monterey Bay (a National Marine Sanctuary), and Moro Cojo Slough (which is home to endangered and rare species), expediting the characterization of the site contamination and moderating the cost of acquiring said information and data.

To assist the Court (and Kaiser) in defining the discovery that Moss Landing seeks at this time, Moss Landing attaches hereto as Exhibit A a list of documents and witnesses relevant to Moss Landing's investigation of the present state of contamination and the activities and sources related to that contamination. Everything sought is directed solely towards understanding and appreciating the types and amounts of contaminants that might be in, or escaping from, the waste piles, and which could be a potential future threat and/or are an existing threat that has not yet been detected and quantified.

///

///

///

---

[2] In its 1981 filing with the Environmental Protection Agency, Kaiser represented that the two waste piles together totaled approximately 5 million cubic feet of waste.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

| | |
|---|---|
| 1 | Respectfully submitted: |
| 3  Dated: May 20, 2008 | ROPERS, MAJESKI, KOHN & BENTLEY |
| | By: _____/s/_____ |
| | THOMAS H. CLARKE, JR. |
| | TIMOTHY A. DOLAN |
| | Attorneys for Plaintiff MOSS LANDING COMMERCIAL PARK LLC |

**EXHIBIT A**

Documents

- Architectural drawings showing the layout of the magnesia plant.
- Architectural drawings showing the layout of the refractory brick plant.
- Sanborn maps of the facility.
- Any documents showing in whole or in part the layout of any plant or facility at the site.
- Process flow diagrams for the magnesia plant.
- Process flow diagrams for the refractory brick plant.
- Any document which describes a part or the entirety of the process at the magnesia plant.
- Any document which describes a part or the entirety of the process at the refractory brick plant.
- Any document which describes, sets forth, or notes the goods or materials that were involved in the magnesia plant operations.
- Any document which describes, sets forth, or notes the goods or materials that were involved in the refractory brick plant operations.
- Any document that is a purchase, shipping, or delivery record for goods or materials that were involved in the magnesia plant operations.
- Any document that is a purchase, shipping, or delivery record for goods or materials that were involved in the refractory brick plant operations.
- Any document that describes in whole or in part the process(es) used in the magnesia plant.
- Any document that describes in whole or in part the process(es) used in the refractory brick plant.
- Any document that describes, sets forth, records, or notes in whole or in part the materials which were inventoried at the site.
- Any and all MSDS sheets applicable to either or both plants.
- All documentation that relates to the NPDES permits applicable to the site or any facility thereon or thereabout, including without limitation application(s) for

permits, descriptions of treatment facility(ies), maps of treatment facility location(s) and discharge points, and report(s) on discharges.

- All SEC filings that refer to (a) any litigation or threatened litigation by public or private entities pertaining to environmental conditions or issues; (b) any administrative action or threat of action pertaining to environmental conditions or issues; or (c) any correspondence about the facility or site pertaining to environmental conditions or issues.

- All documents that relate to (a) any litigation or threatened litigation by public or private entities pertaining to environmental conditions, discharges, releases, or issues; (b) any administrative action or threat of action pertaining to environmental conditions, discharges, releases, or issues; or (c) any correspondence about the facility or site pertaining to environmental conditions, discharges, releases, or issues.

- All documents that relate to any wastewater treatment works or facility at the site, including without limitation diagrams of structures and discharge points, and reports on or about discharges.

- All documents that relate to the treatment or control of any water, air, or waste discharge, release, process, or emission.

- All documents that relate to any wastewater releases, discharges, or flows from the site.

- All documents that relate to any air pollution control equipment, AQMD permits, or air pollution releases, emissions, or discharges at or from the site.

- All documents that relate to waste disposal actions or activities at the site.

- All documents that relate to any release, discharge, emission, or disposal of any solid waste, hazardous waste, hazardous material, hazardous substance, toxic pollutant, toxic air emission, or contaminated substance of any sort whatsoever from or about the site.

- All documents that relate to the disposal of any waste onsite, or any erosion, discharge, or release from such waste(s) or site(s).

- All documents that relate to the disposal of any waste, substance, material, pollutant, or emission off-site, including but not limited to shipping documents, bills of lading, and waste manifests.

- All documents that pertain to building permits.

- All facility maintenance records.

- All documents that pertain to any workers' compensation claim related to exposure to any waste or to any materials or substances used in the industrial processes at the site.

- All documents that pertain to any application for insurance, to the acquisition of insurance, or to any claim made upon any insurance policy.

- All documents that pertain, relate to, describe, or reference one or both of the waste piles located on the site.

- All documents that pertain, relate to, describe, or reference air pollution, waste pollution, or releases or discharges of solid or hazardous waste.

- All documents that pertain to any landfills or waste sites at which substances or materials from the facility were placed.

- All documents that relate to the construction, operation, or maintenance of any plant, system, or site that receives, processes, or treats any potential air pollutant, waste pollution, or releases or discharges of solid or hazardous waste.

- All documents that pertain to any application for fire or liability insurance, including any umbrella policies or self-insured retention mechanism, including without limitation all correspondence related thereto.

- All documents that pertain to any claim made or notice given to any insurance company (a) regarding an environmental or waste release, discharge, event, or occurrence that happened on or about the site; or, (b) regarding an occurrence or event which involved persons, property, or things actually or potentially subject to harm or endangerment by (1) any waste, (2) any chemical, or (3) any substance used in any process at the site.

Percipient Witnesses

Any person that has or may have information about or knowledge of any of the subjects noted above. These individuals are to be identified by name, last known address, last known email address, and last known telephone number.